MATTHEW C. LAPPLE (SBN 193546)
LAPPLE UBELL IP LAW, LLP
19800 MacArthur Blvd 3rd Flr
Irvine CA 92612
Email: matt@lappleubell.com
Telephone: (949) 756-4889
Facsimile: (949) 242-9789

LANCE G. JOHNSON
  (*Admitted Pro Hac Vice*)
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, VA 22030-6413
Email: lance@lgjlegal.com
Telephone: (202) 445-2000
Facsimile: (888) 492-1303

Attorneys for Defendant
ZERODOCS.COM, INC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CONSTRUCTION SPECIFICATIONS INSTITUTE, INCORPORATED, a Maryland corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ZERODOCS.COM, INC., a Minnesota corporation,<br><br>　　　　　　Defendant. | Case No.  8:25-CV-475-JWH-JDE<br><br>The Honorable John W. Holcomb<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ 3

I.      INTRODUCTION ................................................................... 5

II.     SUMMARY OF THE ARGUMENTS ...................................... 7

III.    RELEVANT FACTUAL BACKGROUND - COPYRIGHTS .................... 8

        A.      The MasterFormat System and Publications ...................................... 8

        B.      The Accused Product.......................................................... 10

IV.     ARGUMENT - COPYRIGHT ...................................................... 13

        A.      Copyright Infringement Cannot be Based on Using Information
                Disclosed in a Book Subject to Copyright ...................................... 13

        B.      The Analytical Method for Otherwise Determining Copyright
                Infringement on the Merits.................................................. 16

V.      ARGUMENT – TRADEMARK .................................................. 22

VI.     CONCLUSION.......................................................................... 25

# **TABLE OF AUTHORITIES**

## **Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
 35 F.3d 1435 (9th Cir. 1994) ....................................................................... 17

*Apps v. Universal Music Grp., Inc.*,
 763 F. App'x 599 (9th Cir. 2019) ......................................................... 18, 20

*ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
 402 F.3d 700 (6th Cir. 2005) ................................................................ 20, 21

*Baker v. Selden*,
 101 U.S. 99 (1879) ..................................................................... 7, 13, 14, 16

*Cavalier v. Random House, Inc.*,
 297 F.3d 815 (9th Cir. 2002) ......................................................................... 6

*CDK Glob. Ltd. Liab. Co. v. Brnovich*,
 16 F.4th 1266 (9th Cir. 2021) ..................................................................... 14

*Ets-Hokin v. Skyy Spirits, Inc.*,
 225 F.3d 1068 (9th Cir. 2000) ..................................................................... 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ....................................................................... 14, 16, 19

*Google LLC v. Oracle Am., Inc.*,
 593 U.S. 1 (2021) ......................................................................................... 14

*Gorski v. Gymboree Corp.*,
 No. 14-CV-1314, 2014 WL 3533324 (N.D. Cal. Jul. 16, 2014) ........... 16, 17

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
 471 U.S. 539 (1985) ..................................................................................... 14

*Heim v. Universal Pictures Co.*,
 154 F.2d 480 (2d Cir. 1946) ........................................................................ 21

*Mazer v. Stein*,
 347 U.S. 201 (1954) ..................................................................................... 13

*Shaw v. Lindheim*,
 919 F.2d 1353 (9th Cir. 1990) ..................................................................... 16

*Skidmore v. Led Zeppelin*,

952 F.3d 1051  (9th Cir. 2020) ...................................................................... 17

*Southco, Inc. v. Kanebridge Corp.*,
390 F.3d 276 (3d Cir. 2004) .......................................................... 18, 19, 20

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
610 F.3d 1171 (9th Cir. 2010) ..................................................................... 24

*Tracy Anderson Mind & Body, Ltd. Liab. Co. v. Roup*,
No. 24-6936, 2026 U.S. App. LEXIS 4611 (9th Cir. Feb. 17, 2026) ......... 15

*Universal Ath. Sales Co. v. Salkeld*,
511 F.2d 904 (3d Cir. 1975) ............................................................... 5, 21

## Statutes

17 U.S.C. § 102 .............................................................................. 7, 14, 15, 16

17 U.S.C. § 103 ...................................................................................... 7, 18, 19

17 U.S.C. § 106 .............................................................................................. 5, 14

"The smaller the effort (*e.g.,* two words) the greater must be the degree of creativity in order to claim copyright protection."

—*Universal Ath. Sales Co. v. Salkeld*, 511 F.2d 904, 908 (3d Cir. 1975) (citing *Nimmer on Copyright* § 10.2).

## I.    **INTRODUCTION**

Most building projects in the US require that specification bids be written to follow some version of CSI's MasterFormat ("MF") system.[1]  Plaintiff asks this court for the exclusive right to control any and all uses of the numbers and/or titles in the MasterFormat system that are printed in the publications at issue in this case. It is no stretch to say that CSI would then have a right to claim (as it is doing here with templates for bid proposals) that every project proposal bid using a number or title from its system would constitute an infringement of its copyright in the latest edition of the book disclosing that system.  The copyright laws do not contemplate such vast control of the words found in a publication that is subject to only a minimal review before registration. *See* 17 U.S.C. § 106 for the rights that are embodied in a registered copyright claim: they do not include the scope of control that CSI asserts in this case.

The accused SimpleSpecs templates are written in simple language[2] to help architects and builders provide quotes on building projects. Each template uses only a formatted number and the heading that coincides with that number in the MasterFormat system. The SimpleSpecs templates do not use the other parts of the MF system and are not available for all MF categories.

---

[1] This system organizes building materials and construction techniques like the Dewey decimal system organizes literary works. (*See* https://en.wikipedia.org/wiki/MasterFormat as cited in TAC at ¶16.)

[2] The language of construction is well established. *See, e.g.,* https://inspectapedia.com/Design/Construction-Dictionary.php. Of course, new materials are developed continuously that are unsurprisingly named by the companies that develop them.

CSI obtained copyright registrations for its lengthy books that contain the system as well as substantial amounts of other materials. CSI did not submit the number/heading combinations for registration, only the books as a whole.

Nonetheless, the TAC asserts copyright infringement from the use of numbers and some short, descriptive headings associated with those numbers that are found in both CSI's system and the accused templates. (*See* TAC at ¶ 44.) CSI has conceded that it does not have protection for the numbers or short phrase titles. *See* ECF No. 30 at 16 and Fact 34: "CSI recognizes that it does not have copyright protection for the use of the terms 'metal' or 'cast-in-place concrete' or of the numbers '03' or even '03 30 00,' individually. That has never been the issue. Those terms, independent of the MasterFormat Work exist and are factual items that are not subject to protection."[3]

This begs the question, one the TAC does not answer and that CSI continues to struggle with, "What creative expressions in its publications have been unlawfully copied in the accused templates?" The pleadings, discovery responses, and deposition testimony all point to an assertion of copyright infringement based on mere use of the unprotectable classification *system* disclosed in the 2020 edition of CSI's book.

The TAC assertions of trademark infringement are based only on the accurate, descriptive use of two trademarks to describe CSI and its classification

---

[3] If the entire publication had been copied, CSI would have had an easier path to establish that the registered and accused works are "substantially similar" to establish its infringement claims.  Because that contention has been abandoned (and was never supported by the facts), CSI has remained silent on how it can establish substantial similarity of the registered and accused works, *see Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002), cited by CSI in its brief at page 11 of ECF No. 39, especially since CSI's own witness identified a number of significant differences between CSI's book and lists of the accused templates that he inspected on the ZeroDocs website. *See* Facts 159–165, 167–170, 294.

system.  Pointedly, CSI has admitted in response to Requests for Admission that it has no evidence that ZeroDocs has made any use of a CSI or MASTERFORMAT mark on any of the goods or services listed in its registrations. *See* Facts 295–300.  This is nominative fair use that shifts the burden to CSI to establish the accused uses make anyone confused about an affiliation or association between ZeroDocs and CSI.  Having gone through discovery, CSI has yet to identify any evidence that might carry its burden of proof on this claim.

Summary judgment for ZeroDocs is thus warranted on all counts.

## II.     SUMMARY OF THE ARGUMENTS

Several reasons, any of which are independently sufficient, dictate that CSI's infringement claims must fail.

The ***first reason*** is that the Supreme Court's 1879 decision in *Baker v. Selden*[4] established the durable principle that registering a copyright claim for a book that describes a useful system (i.e., Mr. Baker's accounting system) does not provide protection against the use of that system by others. This principle has since been codified in 17 U.S.C. § 102(b) and expanded to prohibit protection of "to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

The ***second reason*** is that the required process of filtering out unprotected content (e.g., content that lacks originality due to prior publication in an earlier edition under 17 U.S.C. § 103(b) and application of the short phrases doctrine to the number-short title combinations asserted in this case) leave nothing behind relevant for infringement by the accused template product.

---

[4] 101 U.S. 99, 103 (1879).

The ***third reason*** is that CSI has no evidence that ZeroDocs' use of the CSI and MASTERFORMAT marks creates any likelihood of confusion as to affiliation or sponsorship between the companies. This was CSI's burden to establish, and it has failed to carry that burden. Because Plaintiff's tagalong unfair competition claim under state law is predicated upon the improper copyright and trademark claims, this claim also must fall.

## III.    RELEVANT FACTUAL BACKGROUND - COPYRIGHTS

### A.    The MasterFormat System and Publications

The CSI MasterFormat organizational system ("MF system") has been the national standard for identifying construction bids for decades. (Facts 41, 43 & 44.) The system has a hierarchical organization of numbers and a short (1–3 words) description of the material or product (Facts 37–39.) Its main objectives include facilitating communication, enhancing project organization, improving informational retrieval, and promoting consistency. (Fact 324.) In that regard, the MasterFormat system is a tool for construction professionals to create bid specifications (Fact 90), but the MasterFormat content does not include project specifications or specification templates. (Fact 286.)

The current version of the MF system was established with the publication of the 2004 edition. (Fact 16.)  This version was a substantial change from the 1995 version. (Fact 17.)

CSI published the current version of the MasterFormat system on its website free of charge. (Fact 27.) That page was recently placed behind a paywall in anticipation of the release of a new version of the MasterFormat system.

The TAC asserts infringement of four copyrights dated 1979, 1987, 1996, and 2024. (Fact 14.)  The specimen copies submitted for the 1979 and 1987 certificates are no longer available from the Copyright Office archives. (Fact

15.) CSI's witness was not able to identify the book editions that would correspond to the registration certificates from 1979, 1987, or 1996. (Facts 264-266; JA004526.) These evidentiary gaps mean that CSI has failed to establish evidence for any comparison between its asserted rights and the accused product. Accordingly, summary judgment for ZeroDocs is warranted as to CSI's claims of copyright infringement of rights represented by the 1979, 1987, and 1996 registration certificates.

That leaves only the asserted 2024 certificate which was apparently based on the 2020 edition of the MasterFormat book. (Fact 263.) ZeroDocs' analysis will proceed based on that certificate and edition.

The numbers and short titles that make up any version of the MF system are subject to certain rules and conventions that guide their use and future expansion. (Facts 28, 35, 261.) The descriptions found in the divisions and sections are factually concise using standard construction terms or phrases that are generic and nonproprietary (Facts 28–30, 255, 262.)

Differences between standards are "bad." (Fact 253.)[5]

The pre-2004 editions of the MF systems are different than the 2004+ editions. The pre-2004 systems were published with 16 major divisions and a five-digit numbering scheme. The 2004+ editions allow 50 divisions and use a six-digit number in three sets of two digits and optional digits after a decimal point, as shown below. (TAC ¶¶ 40–41, Facts 16–26.)

---

[5] As explained below, CSI's own witness has identified a number of significant differences between the SimpleSpecs templates and the MasterFormat. Such differences cut against any assertion that the two products are substantially similar.



No copyright registration exists for the 2004 edition that has been asserted in this case. (TAC ¶ 6 and Exhs. 1-4.)

The 2020 edition is an updated version of the 2004 edition. (Fact 26.) The TAC identifies six number-phrase combinations in the 2020 edition that it asserts as the basis for its claim of infringement, e.g., in TAC ¶ 44.

CSI has conceded that it does not have protection individually for the numbers or the short phrase titles found in its books. (Fact 34.)

CSI receives 200-800 proposed updates and new entries annually from its user community that are reviewed by a task force of volunteers to help sort through these third-party submissions to keep the MasterFormat system updated. (Facts 86, 91, 97-101, 171-188, 284-285.)

The guiding principles for new titles are spelled out in MF's Guide to Usage (Fact 261), namely that new entries should defer to standard construction terminology (Fact 262) and deal with generic terms (Fact 255) that describe a precise work result or construction practice (Fact 94).

## B.    The Accused Product

ZeroDocs distributed a product called "SimpleSpecs" in 2018 (Fact 280) that was (and still is) composed of a collection of pre-written word processing document templates. (Fact 48.)  The SimpleSpecs templates were created in 2017 (Fact 279) to help users to write bid proposals that complied with the MasterFormat classification system (Fact 49.)

The MasterFormat book is different than the accused template documents. CSI's witness testified that a specification "is a different document entirely" than the MasterFormat. (Fact 276.)

Each SimpleSpecs template is directed to only one entry of CSI's system. (Fact 56.)  The relevant section number and title from CSI's system for a particular SimpleSpecs template is found in the header and footer areas of the document. (Fact 51.)  The remainder of the document is original to the author of the template. (Fact 52.)

That number and title on each template are the only content in common between CSI's system and the accused templates. (Fact 53.) The table below compares the number-phrase combinations identified in the TAC as the basis for its claims to the same number-phrase combinations in the 1995 and 2004 editions.

| 2020 ed. Number-phrase | 1995 ed. | 2004 ed. |
|---|---|---|
| 03 Concrete* | JA000086 ("3 Concrete") | JA000331, JA000357, JA000410 |
| 05 Metals* | JA000191 ("5 Metals") | JA000331, JA000410 |
| 05 50 00 Metal Fabrications | -- | JA000331, JA000358 |
| 05 51 00 Metal Stairs | -- | JA000331, JA000358 |
| 03 05 01 Materials for Concrete* | -- | -- |
| 03 11 19 Insulated Concrete Forms | -- | JA000424 |

There are no SimpleSpecs templates for "03 05 01 Materials for Concrete," "03 Concrete," or "05 Metals" despite assertions to the contrary in the TAC. (Facts 66-68.)

CSI's own witness identified a number of differences between the descriptions of CSI's system in its books compared to the accused templates.

(*See* Facts 145-151, 158-165, 167-170.) He generally viewed differences as "bad" when it comes to standards. (Fact 253.)

CSI did not, however, provide any evidence or any witness that compared the number-title combination of the accused templates to any asserted edition of a registered Work, let alone to any entry that was original to an asserted Work. Instead, CSI relies on an objectionable AI-based text comparison of the 2020 edition of CSI's MasterFormat book to lists of templates from the ZeroDocs website, rather than  the accused templates themselves. (Facts 138-140, 267, 270, 271). CSI's AI analysis determined, however, that the prose in the MasterFormat book was not copied by the templates (Fact 272) and that the likelihood of infringement was "low." (Fact 273.)

In its effort to identify original content, ZeroDocs prepared a chart that mapped each of the SimpleSpecs template number-title combinations to its first publication in a MasterFormat edition. This map also identifies the entries that are different in SimpleSpecs and one entry that was original to SimpleSpecs. (Fact 246.) This comparison map establishes that all of the accused templates use information that was created either: (a) originally by the author of the SimpleSpecs templates or that were (b) associated with entries published in earlier editions before the 2020 edition. (Facts 242-246.) This is consistent with the author's testimony that he created SimpleSpecs in 2017. (Fact 279.)

As to the asserted trademark rights, the record before the court is devoid of any evidence that ZeroDocs did anything which created a likelihood of confusion or suggested to a consumer that CSI sponsored, approved, or endorsed ZeroDocs.  ZeroDocs has not promoted any sponsorship, association, or endorsement by CSI. (Facts 80-82.) The only one making anything close to an endorsement was actually CSI, when it sent an email suggesting that folks could contact ZeroDocs for a commercial bid specification system. (*See* Fact 85.) ZeroDocs does not sell or publish books, periodicals, or manuals in printed or

electronic form nor is there any evidence that ZeroDocs offers association or educational services under any mark, even its own. (Facts 83-84, 295-299.)

Lastly, the ZeroDocs website did refer to "CSI" and "CSI MasterFormat" to identify that the SimpleSpecs templates were compliant with CSI's system of classification codes. (Fact 78.)  CSI has acknowledged that these references "accurately reflect the source of" the standards to which the ZeroDocs templates were written. (ECF 27 at pp. 14-15.) (Fact 79.)

## IV.    ARGUMENT - COPYRIGHT

### A.    Copyright Infringement Cannot be Based on Using Information Disclosed in a Book Subject to Copyright

Copyrights are *not granted* to protect the information published in a book or the ideas that such information conveys. Such protection is the sole province of the patent system.[6] *See Baker v. Selden*, 101 U.S. 99, 102 (1879):

> The novelty of the art or thing described or explained has nothing to do with the validity of the copyright. To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright. The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government.

*See also Mazer v. Stein*, 347 U.S. 201, 217 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself.").

---

[6] No utility patent applies in this case. (Fact 301.)

The principles of *Baker* continue to thrive today and have been codified in 17 U.S.C. § 102(b). *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985) ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991) ("This Court has long recognized that the fact/expression dichotomy limits severely the scope of protection in fact-based works."); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) ("These limitations [of 17 U.S.C. § 102 (b)], along with the need to 'fix' a work in a 'tangible medium of expression,' have often led courts to say, in shorthand form, that, unlike patents, which protect novel and useful ideas, copyrights protect 'expression' but not the 'ideas' that lie behind it."); *CDK Glob. Ltd. Liab. Co. v. Brnovich*, 16 F.4th 1266, 1276 (9th Cir. 2021) ("But the Copyright Act does not provide copyright owners the exclusive right to use their works. *See* 17 U.S.C. § 106.  Such a right can only be secured, if it can be secured at all, by letters-patent.").

The principles of *Baker v. Selden* have been repeatedly confirmed by the 9th Circuit, e.g., *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (emphasis supplied):

> The Copyright Act provides that copyright protection does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in the copyrighted work. 17 U.S.C. § 102(b). ***Thus, a defendant incurs no liability if he copies only the ideas or concepts used in the plaintiff's work***. To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works substantially similar …. To prove unlawful

appropriation, on the other hand, the similarities between the two works must be "substantial" and they must involve protected elements of the plaintiff's work.

*See also Tracy Anderson Mind & Body, Ltd. Liab. Co. v. Roup*, No. 24-6936, 2026 U.S. App. LEXIS 4611, at *2 (9th Cir. Feb. 17, 2026) ("The Copyright Act sets forth various categories of 'original works of authorship fixed in any tangible medium of expression' that are afforded copyright protection. 17 U.S. Code § 102(a)(1)-(8). But in no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery.").

In this case, CSI asserts broad rights to its organizational system as reflected by the number-title combinations found in its series of books.  This system-level approach permeates the system allegations of the TAC, references to a "creatively designed *system*" (Facts 89, 96, 116-117, 189, 254, 275), the testimony of its publications and witnesses confirming that the MasterFormat book and the MasterFormat system are one and the same (Facts16-19, 33, 89, 116, 117) and the indistinct grounds for its comparisons (*e.g.,* Facts 138-141, 274-276) with a complete inability to identify any expressive, original literary content from the book that was adopted by a SimpleSpecs template (Fact 285-287).

CSI is unable to prove that it has been damaged by any sales of the accused templates. CSI's sales have apparently been unaffected by sales of the SimpleSpecs templates. (Fact 278.)

The SimpleSpecs templates overlap with CSI's books only in the number-title combinations that identify a category of products or results. (Facts 51-54.) CSI has not adduced any evidence that those number-title combinations represent creative and protectable literary expressions. (*See* Facts 28-30, 34-36,

262.)  The issue of copyright infringement must focus on literary expression, not the benefits or usefulness of the systems described in CSI's book. *See* 17 U.S.C. § 102(b). (As wholesale copying of any book is not involved in this case, the thin protections accorded arrangement and layout in a compilation, e.g., of third-party submissions, do not apply. *Feist Publ'ns* at 349.)

Accordingly, the SimpleSpecs templates do not infringe any of the asserted copyrights for CSI's MasterFormat books.

## B.    The Analytical Method for Otherwise Determining Copyright Infringement on the Merits

If the foregoing arguments regarding assertions of rights to the disclosed system under *Baker v. Selden* are not deemed sufficient as a matter of law, ZeroDocs does not infringe under established copyright infringement analysis.

To prevail on the merits of a copyright infringement claim, a plaintiff must show: (1) ownership of a valid copyright and (2) that the defendant copied constituent elements of the work that are original.  *See Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345.

The Ninth Circuit requires a showing of both: "substantial similarity of general ideas" (an intrinsic test[7]) and "substantial similarity of the protectable expression of those ideas" (an extrinsic test). *Gorski v. Gymboree Corp.*, No. 14-CV-1314, 2014 WL 3533324, at *3 (N.D. Cal. Jul. 16, 2014) (emphasis added) (*quoting Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). The extrinsic

---

[7] For purposes of the present motion only, ZeroDocs will not assert differences under the intrinsic test and will focus only on the requirements of the extrinsic test.

test considers the protectable elements in the copyrighted work. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

Applying the extrinsic test is itself a 3-step process. *Gorski*, 2014 WL 3533324, at *4. The Court must: (1) confirm that similarities exist between the copyrighted work and the allegedly infringing work; (2) determine whether the allegedly similar features are those which are protected by copyright; and (3) assess whether there is "substantial" similarity between the protectable elements and the allegedly infringing work. *Id.*

Analysis Step 1: Filtering.  A preliminary step for any copyright infringement analysis requires that a factfinder must "filter" the copyrighted work to identify the protectable elements of the work.  Only then can the factfinder determine whether the accused work is substantially similar to those protectable elements standing alone. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1070 (9th Cir. 2020).

CSI has already conceded in this case that it does not have a bona fide copyright claim in the numbers or titles individually.[8] (ECF No. 30 at 16–17.) This focuses the filtering process for this case. This filtering of the unprotected content from the MF 2020 edition leaves nothing that can be infringed by the SimpleSpecs documents.

CSI identifies only six specific number/title combinations in the TAC from the MF system that it asserts have been used in the SimpleSpecs templates as the basis for infringement.[9] (*See* TAC at ¶ 44 and ECF No. 30 at 16–17.)  CSI

---

[8]  Only the individual number/title combinations are involved in this case (one title/number per three-page template document). None of the remainder of the text written for the MasterFormat books is involved in this case, as CSI's own analysis confirmed (Fact 272). Curiously, CSI has denied this fact in its responses to Requests for Admission 25-28 (JA004558-4560.)

[9]  CSI makes passing reference to wholesale copying and to some unspecified software system that allegedly used a complete copy of the MF

did not identify any other specific number-title combinations that it alleged were "original" to the 2020 edition.

CSI has also not identified a SimpleSpecs template for three of the six asserted number-title combinations. This is because no such templates exist. (Facts 67, 68, 247, 248) Accordingly, we can only focus on the remaining specific number-title combinations that CSI identified in the TAC.

In this case, three particular filtering principles are applicable and presented herein as a basis for summary judgment in favor of Zerodocs:

1.    Subsequent editions of a publication only receive copyright protection for the new, original content. 17 U.S.C. § 103(b).

2.    Restrictive title naming rules preclude creativity of expression for the titles in Masterformat.

3.    Short phrases and ordinary phrases are not protectable by copyright. *See Apps v. Universal Music Grp., Inc.*, 763 F. App'x 599, 600 (9th Cir. 2019); and the same policies logically extend to bar protection for numbers. *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286-87 (3d Cir. 2004) ("We believe that the Copyright Office's longstanding practice of denying registration to short phrases merits deference. We accept the Copyright Office position and believe that it logically extends to part numbers.").

Filtering Principle 1. Content from an earlier edition is not protectable in a later edition: The first content that can be filtered from the 2020 edition includes the entries from the unasserted 2004 edition that were repeated in the 2020 edition.  The comparisons done by ZeroDocs show that ***none*** of the number-title combinations found in the accused templates is original to the 2020 edition.

system. ZeroDocs has never sold or offered such software and has not published the MF system in any book, manual, or periodical. (Fact 47.)  CSI has no evidence to the contrary.  The template product is the only product involved in this case.

(Fact 242.)  Pointedly, all of the number-title combinations in the templates are found in an earlier MF edition or were created by the SimpleSpecs author. (Facts 243-246.) The repeated content found in the later 2020 edition thus lacks originality and is not protected by registration of the 2020 edition. *Feist Publ'ns* at 361; 17 U.S.C. § 103(b).

That leaves two entries from the 1995 edition for consideration[10] that are made of a single digit number ("3" or "5" and a single word ("Concrete" or "Metals"). These are not precisely the same as the two-digit numbers that are asserted as part of the infringing templates ("03" and "05"). The possibility of a difference in copyright status between these single digit and double-digit numbers implicates the slippery slope of copyright protection that was discussed in *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004) ("[T]he government suggests that extending copyright protection to part numbers would unduly interfere with the legitimate use of the numbers in question. . . . [I]f Southco's nine-digit numbers are protected, would there be a principled basis for denying protection to a number with, say, seven or five digits?").

That leaves only the possible originality by CSI of these single digit-single word combinations as the final issue of scrutiny. CSI has identified no evidence that these very short number-title combinations are the product of original expression in the 2020 MF edition.

The issue is, however, a moot point: there are no SimpleSpecs templates directed to these broad, directory-level, number-single word title combinations. (Facts 247, 248.)  Copyright infringement cannot be found from content that is not copied.

---

[10] CSI's witness and its discovery responses could not identify which of the registration certificates in this case were based on the 1995 edition of the MasterFormat book. (Facts 264-266.) As noted above, this failure of evidence should be sufficient to render the 1995 edition a moot point.

Filtering Principle 2. Naming rules preclude creativity: Any assertions of creativity of title names in this case are contradicted by a naming scheme with "severe constraints." (Fact 313.) CSI acknowledges that titles must follow certain "guiding principles" (Fact 261) using generic and standard construction terminology. (Facts 255, 262.)  The numbers flow from "a deliberately designed classification framework" (Fact 311) with a "curated hierarchy." (Fact 312.) Such restrictions preclude creativity in the titles and their associated numbers. *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 284 (3d Cir. 2004) ("In sum, we hold that the Southco part numbers are not protected by copyright because they are mechanically produced by the inflexible rules of the Southco system.")  CSI has failed to produce evidence to the contrary or that would identify any particular title that it created that reflected creativity.

Filtering Principle 3. The short phrases doctrine filters out the number-title combinations of the MF books.  Short phrases from within a larger work cannot be the basis for suit in this Circuit. *See Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1081 n.14 (9th Cir. 2000) ("Short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed.") and *Apps v. Universal Music Grp., Inc.*, 763 F. App'x 599, 600 (9th Cir. 2019) ("Words and short phrases are not copyrightable, nor are ordinary phrases.").

Numbering a listing of short phrases, particularly when those phrases are standard and generic in an industry (*see* Facts 28–30, 255, 262), might help to make a useful system, but it does not represent protectable expression. *See Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373–74 (10th Cir. 1997) (holding that numbers that are arbitrarily chosen and are largely sequential are not protectable elements of copyright). *See also ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 708–09 (6th Cir. 2005) ("The mere fact that numbers are attached to or are a by-product of categories and

descriptions that are copyrightable, does not render the numbers themselves copyrightable.")

The policies behind the short phrases doctrine include a goal of discouraging extortionate misuses of an easily obtained copyright registration to extort an unjustified license fee. *See ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 709–10 (6th Cir. 2005) (cost and expense of defending against non-meritorious claims "would provide a way for the creators of otherwise uncopyrightable ideas or works to gain some degree of copyright protection through the back door simply by assigning short numbers or other shorthand phrases to those ideas or works.").

Even if creativity might somehow now be asserted by CSI despite the evidence, there is an inverse relationship between effort and creativity required to establish protection that has not been met. *See Universal Ath. Sales Co. v. Salkeld*, 511 F.2d 904, 908 (3d Cir. 1975) ("[T]here is a reciprocal relationship between creativity and independent effort. The smaller the effort (e.g. two words) the greater must be the degree of creativity in order to claim copyright protection." (citing *Nimmer On Copyright* § 10.2).

This sliding scale principle was also discussed in *Heim v. Universal Pictures Co.*, 154 F.2d 480, 488 (2d Cir. 1946), with the admonition: "In an appropriate case, copying might be demonstrated, with no proof or weak proof of access, by showing that a single brief phrase, contained in both pieces, was so idiosyncratic in its treatment as to preclude coincidence."

CSI has made no showing that any "idiosyncratic phrase" is found in its number-title combinations that reflect literary creativity. Certainly, this standard for creativity in a short phrase is not met by "3 Concrete" or "5 Metals."

The net result of filtering the copyrights asserted for the 2020 edition of the MasterFormat publication according to statutory and established principles

leaves nothing of relevance that the accused templates might infringe. The accused SimpleSpecs simply do not infringe any of the CSI copyrights.

Step 2: Substantial Similarity Under the Extrinsic Test. The SimpleSpecs templates are not "substantially similar" to any protected content from the asserted 2020 MF publication. The MasterFormat books do not include project specifications or specification templates. (Fact 294.) The only possible overlap could be from the number-title combinations that identify the subject matter of the template document. (Fact 53.) As discussed above, these number-title combinations are not protectable under a copyright for the publication.

CSI also acknowledges that there are substantial additional differences between the MasterFormat publications and the accused document templates. Notably, the MasterFormat system is not a system for preparing commercial bid specifications (Facts 90, 294) and the SimpleSpecs templates have a different focus (Fact 149), simplified framework (Facts 145-147, 150), and different titles for many entries. (Fact 151.) On the undisputed facts, the SimpleSpecs templates are not substantially similar to the 2020 MasterFormat book.

## V.    **ARGUMENT – TRADEMARK**

In the TAC, CSI acknowledged that ZeroDocs had used the CSI and MASTERFORMAT marks to correctly refer to CSI and its classification system. (TAC at ¶ 76.) What seems to bother Plaintiff is that ZeroDocs is selling a product written to a standard its volunteers developed but that Plaintiff does not control. The copyright infringement and trademark infringement allegations are pretextual translations of CSI's discontent. Both are frivolous and lack factual or precedential support.

Discovery has not helped CSI find factual support for its claims, especially its trademark infringement claims.

Discovery by ZeroDocs has, however, resulted in a series of CSI responses to Requests for Admission in which it admitted that it has no evidence of infringement for any of the marks it asserted.

CSI has admitted that it has no evidence that ZeroDocs was using any asserted mark on or in connection with the goods or services listed in the associated trademark registration certificate. (Facts 295-299.)  A matter admitted under Fed. R. Civ. P. 36(b) is deemed "conclusively established" unless the court permits the admission to be withdrawn or amended. No such permission has been granted here.  That leaves us with barebones allegations of consumer confusion from unjustified inferences of affiliation or sponsorship (*see* TAC at ¶¶ 24, 53 & 62[11]) and facts that confirm ZeroDocs used the CSI and MASTERFORMAT marks to identify CSI and its system. (Facts 314-347 and 349-364.) Conclusory assertions and dozens of nonprobative facts are not sufficient to establish confusing affiliation or inferred sponsorship that might confuse any consumer[12] in the relevant market.

TAC ¶ 42 refers to "unlawfully displayed the CSI Marks"[13] but provides only one example of a display for two marks (the CSI and MASTERFORMAT marks) that accurately refer to CSI as the source of the MasterFormat brand of classification system.  Any use of the CSI or MASTERFORMAT marks by

---

[11] The only legal theory that seems to fit CSI's allegations is that any use of any CSI mark or designation in any context is somehow impermissible.  This is not, however, a correct proposition of legal principle.

[12] In this case, the consumer of the products here are architects, engineers, and construction professionals who are sufficiently sophisticated in their craft that they know what a project specification is and how to use or write one. (*See* Facts 11, 12, 42-45, 49, 77, 89-91, 93.)

[13] The term "CSI Marks" is a defined term that encompasses nine trademarks covering printed periodicals, electronic magazines, manuals in the field of construction project management, education services, and association services.

ZeroDocs was only to identify the CSI system for which the SimpleSpecs templates could be used. (Fact 78; TAC ¶76.)

Defendant's limited use of the only applicable name for CSI's classification system is not improper, and unadorned allegations to the contrary do not carry CSI's burdens of proof under the third step of the nominative fair use test of *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) ("A defendant seeking to assert nominative fair use as a defense need only show that it used the mark to refer to the trademarked good, as the [defendants] undoubtedly have here. The burden then reverts to the plaintiff to show a likelihood of confusion.").

There is no falsity in the statements made by ZeroDocs: CSI was accurately identified as the source of the MasterFormat classification divisions in plain text without any suggestion of affiliation by text or context. ZeroDocs merely informed visitors to its site that its SimpleSpecs product was designed to produce specifications that complied with CSI's system. Such speech is not improper or actionable. The same accurate speech also contradicts allegations that Defendant's truthful reference to the source of the MasterFormat standards represented some form of unfair competition via implied association.

//
//
//

## VI.    <u>CONCLUSION</u>

For the reasons discussed herein and based on the undisputed facts identified herein, Defendant's motion for summary judgment of Counts I–IV should be granted.

Respectfully submitted,

Date: March 6, 2026            JOHNSON LEGAL PLLC

By:    *s/Lance G. Johnson*
Lance G. Johnson
Admitted Pro Hac Vice

LAPPLE UBELL IP LAW, LLP
Matthew C. Lapple

Attorneys for Defendant
ZERODOCS.COM, INC.

## CERTIFICATION OF WORD-LIMIT COMPLIANCE

The undersigned, Counsel of Record for ZeroDocs.com, Inc., certifies that this brief contains 5876 words, which complies with the word limit of Local Rule 11-6.1.

Date: March 6, 2026                              *s/Lance G. Johnson*

                                                 Lance G. Johnson